IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEHIGH GAS WHOLESALE, LLC,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-5536** |
| v. | : | |
| | : | |
| **LAP PETROLEUM, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**MCHUGH, J.**                                                                                             **MARCH 23, 2015**

This is a commercial dispute that involves claims for breach of contract and tortious interference with contract. Plaintiff, a Pennsylvania corporation, brought suit in the Eastern District of Pennsylvania. Defendant, a Virginia corporation, has moved to dismiss this action for lack of personal jurisdiction, or, in the alternative, transfer to the Eastern District of Virginia. Because Plaintiff concedes that this Court lacks general jurisdiction over Defendant, and has failed to carry its burden to present competent evidence in support of specific jurisdiction, I will grant Defendant's Motion and transfer this matter to the Eastern District of Virginia.

I.   **Factual Background**

Plaintiff Lehigh Gas Wholesale, LLC ("LGW") is a Delaware limited liability company with its principal place of business in Allentown, Pennsylvania. Compl. at ¶ 12. Although operating out of Pennsylvania, LGW "is engaged in the marketing and distribution of petroleum products in the Commonwealth of Virginia and certain other states." Id. at ¶ 13. LGW sells Sunoco-branded products to subjobbers and service station retailers. Id.

Defendant LAP Petroleum, LLC ("LAPP") is a Virginia limited liability company with its principal place of business in Virginia Beach, Virginia. Id. at ¶ 10. LAPP "is a branded motor fuels products jobber and subjobber in the business of selling, among other brands, Sunoco-branded motor fuel products to service station retail dealers in the Commonwealth of Virginia." Id. at ¶ 11.

The underlying transaction that gives rise to this case was first entered into by two non-parties. On November 1, 2010, Manchester Marketing ("MM") entered into a Sales Agreement with D&MRE, LLC ("DMRE"), both Virginia owned and operated entities. Id. at ¶¶ 6–9, 14. Under the Sales Agreement, DMRE agreed to purchase Sunoco-branded motor fuels from MM for resale at DMRE's service stations for a period of ten years or until DMRE purchased at least 9,000,000 gallons of motor fuel from MM. Id. On March 5, 2013, MM assigned all rights under the Sales Agreement to Defendant LAPP. Id. at ¶ 17. On the same date, LAPP agreed to purchase 7,700,000 gallons of Sunoco-branded motor fuels from MM ("Subjobber Agreement") over a period of ten years commencing on April 1, 2013. Id. at ¶ 18.

In a paragraph titled, "Governing Law," the Sales Agreement and Subjobber Agreement both state, "The parties hereto acknowledge and agree that this Agreement has been made within, and that this Agreement shall be construed and interpreted in accordance with the provisions of, the laws of the Commonwealth of Virginia." Sales Agreement at ¶ 34; Subjobber Agreement at ¶ 35. Similarly, both agreements contain a paragraph titled "Venue," that reads, "The parties hereto consent to the jurisdiction of the Courts of the Commonwealth of Virginia, including specifically, the Circuit Court of the County of Chesterfield and waive all objections to actions brought in such courts based upon jurisdiction, preference, convenience or otherwise." Sales Agreement at ¶ 35; Subjobber Agreement at ¶ 36. Defendant avers that "[t]he Subjobber

Agreement was negotiated, executed and performed exclusively in Virginia." Motion to Dismiss at ¶ 5; see also Affidavit of Sanjay Patel at ¶¶ 7–14. Plaintiff does not contest this factual assertion, as it was not an original party to the agreement, but notes that it has not had the opportunity to conduct discovery in order to test Defendant's characterization of the facts.

On December 19, 2013, MM assigned all rights under the Subjobber Agreement to Plaintiff LGW. Compl. at ¶ 19. Defendant LAPP claims it was unaware of this assignment. Defendant's Brief at 3; Affidavit of Atul Patel at ¶ 11. Defendant purchased 596,369 gallons of product under the Subjobber Agreement and allegedly stopped purchasing product on January 16, 2014. Compl. at ¶ 21. Plaintiff characterizes the Subjobber Agreement as a subcontract, alleging that the primary agreement was a Jobber Agreement between MM and Sunoco. Plaintiff's Opposition Brief at 4; Subjobber Agreement at ¶ 1.

Defendant avers that it conducts its business exclusively in Virginia. Affidavit of Sanjay Patel at ¶ 4. In addition, Defendant claims that it "has never operated in Pennsylvania; has never conducted any business or attempted to conduct any business in Pennsylvania; has never advertised in Pennsylvania; and has never initiated any business contacts in Pennsylvania." Id. Plaintiff has not presented any alleged contradictory evidence regarding these representations other than the existence and terms of the contractual relationship between the parties.

LGW's Complaint includes two causes of action: (1) breach of contract pursuant to the Subjobber Agreement; and (2) tortious interference with contract.

## II.  Legal Analysis

In the event of a jurisdictional challenge, Plaintiff carries the burden to prove personal jurisdiction using "affidavits or other competent evidence." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316

3

(3d Cir. 2007). The "bare pleadings alone" are not enough to withstand a motion to dismiss for lack of personal jurisdiction, as Plaintiff must respond with "actual proofs, not mere allegations." Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). Because I am not holding an evidentiary hearing, Plaintiff only needs to establish a *prima facie* case of personal jurisdiction. Metcalfe, 566 F.3d at 330. In order to meet this burden, Plaintiff must demonstrate "with reasonable particularity sufficient contacts between the defendant and the forum state." Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotations and citations omitted). At this early stage, I am required to accept Plaintiff's allegations as true and construe all disputed facts in Plaintiff's favor. Id.

    a. *Personal Jurisdiction*

Plaintiff concedes that this District lacks general jurisdiction over Defendant. Plaintiff's Opposition Brief at 3. Therefore, this Court must have specific personal jurisdiction over Defendant in order to preside over this action. Specific personal jurisdiction is a three-part inquiry in this Circuit. The Court must find that (1) the defendant "purposefully directed [its] activities at the forum"; (2) the litigation arose out of or related to one or more of these activities; and (3) jurisdiction "comport[s] with fair play and substantial justice." O'Connor, 496 F.3d at 317 (internal citations omitted).

In the specific context of "interstate contractual obligations, [the Supreme Court has] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). The absence of physical contacts alone is not enough to defeat personal jurisdiction. Id. at 476. At the same time, however, "contacts with a state's citizens that take place outside the

4

state are not purposeful contacts with the state itself." O'Connor, 496 F.3d at 317.  Finally, and perhaps most significantly, in order to comply with due process, a defendant must deliberately target the forum state such that it "may reasonably anticipate being haled into court there." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (internal quotation and citations omitted); D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 103 (3d Cir. 2009).

In evaluating jurisdiction over a contractual dispute, I must consider the totality of the circumstances, including "the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).  Requisite contacts may also include "contemplated future consequences." Mellon Bank (E.) PSFS, Nat. Ass'n, 960 F.2d at 1223.  See also Penco Products, Inc. v. WEC Mfg., LLC, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013).  Moreover, "courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Gen. Elec. Co., 270 F.3d at 150.  The Third Circuit has explicitly held that the "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." Mellon Bank (E.) PSFS, Nat. Ass'n, 960 F.2d at 1223.

Plaintiff first argues that Defendant "purposefully directed [its] activities" to Pennsylvania by "obligating itself to purchase Sunoco-branded products" under the Subjobber Agreement.  Plaintiff's Opposition Brief at 4.  The Subjobber Agreement specifically references the right to use the Sunoco brand, subject to the provisions of the primary Jobber agreement, to which Sunoco was a party.  Subjobber at Agreement at ¶ 23.  Plaintiff alleges that this obligation required Defendant to comply with Sunoco's branding standards, including compliance with

5

Sunoco's image specifications and pricing guidelines.  Id. at ¶¶ 2–4, 17, 18, 23.  Moreover, Defendant was required to accept Sunoco credit cards in lieu of cash.  Id. at ¶ 17.  Plaintiff maintains that by entering into the Subjobber Agreement, "not only did [Defendant] obligate itself to purchase Sunoco's products, but it secured the integral right to use Sunoco's brand names and trademarks in operating its business."  Plaintiff's Opposition Brief at 5.  Therefore, since Sunoco is a Pennsylvania owned and operated corporation, Plaintiff contends that Defendant submitted to the "oversight of its business operations" by Sunoco and should have known that it was subject to suit in Pennsylvania as a result.  Id. at 5–6.

Defendant counters that the Subjobber Agreement was negotiated, executed, and performed exclusively in Virginia by Virginia parties.  Further, the terms of the Subjobber Agreement specifically contemplate future litigation as taking place in Virginia, including a Virginia venue provision as well as a Virginia choice-of-law clause.  In sum, Defendant proffers, "nothing in the totality of the circumstances surrounding the negotiation, execution, performance or terms of the Subjobber Agreement in any way supports a conclusion that Defendant LAP Petroleum purposefully directed any activities towards Pennsylvania such that it could reasonably anticipate being haled into court there."  Defendant's Brief in Support of its Motion at 9.  In its Reply Brief, Defendant further emphasizes that Plaintiff has made "absolutely no allegations or assertions that Defendant directed any contact toward Pennsylvania or engaged in any activity whatsoever directed toward Pennsylvania."  Defendant's Reply Brief at 1.

Indeed, the purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."  Burger King Corp., 471 U.S. at 475.  Emphasizing MM's role in this dispute as a third-party that unilaterally assigned its rights under the Subjobber Agreement to a Pennsylvania corporation,

6

Defendant contends it would be fundamentally unfair and offend traditional notions of fair play and justice to hale it into this forum based on actions entirely outside its control.  Defendant further argues that the fact that it ended up as a party to a contract with a Pennsylvania resident "is a purely random and fortuitous situation" resulting from precisely the type of unilateral activity of a third party that cannot be used to establish personal jurisdiction under Burger King Corp..  See id.

While the absence of physical contacts alone is not enough to defeat jurisdiction, the law is equally clear that contact with a state's citizen outside the forum does not amount to purposeful availment, which seems to defeat Plaintiff's best argument here that personal jurisdiction is achieved through Sunoco's role in the Subjobber Agreement.  The contract at issue was not only negotiated and performed exclusively in Virginia, originally by Virginia parties, but perhaps more importantly, the clear terms of the contract support a finding that Virginia was the contemplated venue in the event of a contractual breach.  Given that Plaintiff must have read and understood the contract it inherited via assignment, if anything, it was Plaintiff that was on notice that it could be haled into Virginia.  Thus, in viewing the totality of the circumstances, Plaintiff has failed to demonstrate with reasonable particularity that Defendant deliberately targeted Pennsylvania.

Moreover, it seems tenuous, at best, that compliance with a third party's branding guidelines, absent a showing that Defendant intentionally directed more substantial activities at Pennsylvania, would provide a basis for Defendant to be haled into the present forum. Defendant summarizes the issue aptly:

> In sum, the mere fact that Defendant entered into a contract with a third party and, in doing so, agreed to conduct itself in accordance with certain standards of yet another third party who happens to be headquartered in Pennsylvania, is simply insufficient to establish personal jurisdiction in Pennsylvania.

Defendant's Reply Brief at 3.  Thus, even in viewing all facts and inferences in a light most favorable to Plaintiff, this Court cannot exercise personal jurisdiction over Defendant.[1]

Plaintiff next argues that because the second count of the Complaint raises a tortious interference with contract claim, I should employ the Calder "effects test" to assess whether there is personal jurisdiction over Defendant specific to this claim.  Calder v. Jone, 465 U.S. 783 (1984) (holding that a California court could exercise personal jurisdiction over non-resident defendants in libel suit where defendants published allegedly libelous article in National Enquirer and "effects" of defendants' actions were calculated to injure plaintiff in California).

To establish personal jurisdiction over Defendant under Calder, Plaintiff must show that: (1) Defendant committed an intentional tort; (2) Plaintiff felt the brunt of the harm here in Pennsylvania such that Pennsylvania can be said to be the focal point of the resulting harm suffered; and (3) Defendant expressly aimed its tortious conduct at Pennsylvania, such that Pennsylvania can be said to be the focal point of the tortious activity.  Remick v. Manfredy, 238 F.3d 248, 258 (3d Cir. 2001).  In approaching Calder, it is prudent to recall Judge Becker's caution that Calder "cannot be severed from its facts."  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998).  In particular, "to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  Id. at 266.

---

[1] Plaintiff suggests in a footnote that because it was not a party to the original Subjobber Agreement negotiations between MM and Defendant, it should be afforded discovery to test Defendant's factual allegations relating to the negotiation and execution of the underlying agreements.  Plaintiff's Opposition Brief at 6 n.1.  "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (internal citation omitted).  Here, Plaintiff has not presented factual allegations sufficient to give rise to jurisdictional discovery, and accordingly, Plaintiff's implicit request to engage in jurisdictional discovery is denied.

Plaintiff argues that the Court has personal jurisdiction over the tortious interference claim because "Defendant tortuously interfered with the business relationship between two (2) Pennsylvania corporations, both of whom are headquartered and maintain their principal places of business in the Commonwealth, and, accordingly, the brunt of the harm must have necessarily been felt in Pennsylvania."  Plaintiff's Opposition Brief at 6–7; Plaintiff's Sur-Reply Brief at 7. Plaintiff relies heavily on Remick v. Manfredy, supra, to argue that the Calder "effects test" has been satisfied here.  238 F.3d at 260.  In Remick, the Third Circuit found jurisdiction, but did so because the defendants' alleged tortious conduct was expressly aimed at injuring Remick "in Pennsylvania where he lives and works."  Id.

Under the Calder "effects test," the critical question is whether Plaintiff has identified acts undertaken by Defendant demonstrating that it "expressly aimed" its tortious conduct at Pennsylvania.  IMO Indus., Inc., 155 F.3d at 266.  Plaintiff fails to address this crucial issue, which is fatal to its argument.  In fact, as explained in greater detail above, Plaintiff has not presented competent evidence that Defendant directed *any* specific activity, tortious or otherwise, toward Pennsylvania.  Accordingly, I do not need to engage any further in the Calder "effects test," nor do I need to reach the issue of whether Plaintiff's tortious interference claim is barred by the "gist of the action" doctrine, as Plaintiff has failed to establish personal jurisdiction over Defendant specific to this claim.

   b. *Venue*

Because this Court lacks personal jurisdiction over Defendant, the parties agree that venue is also improper under 28 U.S.C. § 1391.[2]

---

[2] Defendant's Brief at 10 (citing Hyndman v. Johnson, No. 10-7131, 2011 WL 570088, at *5 (E.D. Pa. Feb. 15, 2011) ("Because the Court finds that it lacks personal jurisdiction over [Defendant], it necessarily follows that the Eastern District of Pennsylvania is an improper venue."); Plaintiff's Opposition Brief at 7 ("To the extent that this

28 U.S.C. § 1406(a) "comes into play where plaintiffs file suit in an improper forum." Lafferty v. St. Riel, 495 F.3d 72, 77 (3d Cir. 2007). "The language of [§] 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962). Once triggered, 28 U.S.C. § 1406(a) is clear that a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

I conclude it is in the interest of justice to transfer this action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a), where Plaintiff could have originally started suit.

**III.   Conclusion**

Because this District lacks specific jurisdiction over Defendant, Defendant's Motion to Dismiss or Transfer is granted in part. This action shall be transferred to the Eastern District of Virginia. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Court Judge

---

Honorable Court determines that it does not have personal jurisdiction, Plaintiff agrees that transferring venue is necessarily appropriate.").